UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| REGINALD HOLLIDAY, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:12CV01732 ERW |
| ) | |
| J S EXPRESS INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Plaintiffs Reginald Holliday and Fred Biondo, et al's ("Plaintiffs") Motion to Issue Notice to Similarly Situated Persons Under 29 U.S.C. § 216(b). [ECF No. 52]. Defendant J S Express Incorporated ("Defendant") filed a Response in Opposition [ECF No. 61], and Plaintiffs subsequently filed their Reply [ECF No. 66].

**I. BACKGROUND**

On March 13, 2012, Plaintiffs filed this action in the Northern District of Illinois, Eastern Division. [ECF No. 1]. On September 25, 2012, the action was transferred to the United States District Court for the Eastern District of Missouri. In their Third Amended Complaint [ECF No. 55], Plaintiffs assert collective claims for unpaid overtime under the Fair Labor Standards Act ("FLSA") and failure to pay minimum wages under the FLSA. Plaintiffs also assert six individual claims under Illinois wage and hour laws. On January 15, 2013, Plaintiffs filed the instant Motion to Issue Notice to Similarly Situated Persons Under 29 U.S.C. § 216(b). A hearing was held on April 29, 2013, in which the Court heard argument of counsel on the pending Motion.

Plaintiffs ask that the Court grant their request to issue Opt-In Notice pursuant to Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. §216(b), to similarly-situated persons who worked as courier or fleet drivers for Defendant and were classified as independent contractors. Specifically, Plaintiffs seek an Order:

> A. Conditionally certifying this action for purposes of notice and discovery;
>
> B. Tolling the limitations period from the date the Complaint was filed;
>
> C. Approving the form and content of the "Notice" and "Consent Form," and directing that the forms be sent to all potential class members;
>
> D. Requiring Defendant to submit to Plaintiffs, within seven (7) days of the Court's Order, a complete list of the names and addresses of all current and former courier or fleet drivers who worked for Defendant in the three years preceding Plaintiffs filing their Complaint, through the present, and who were classified as independent contractors;
>
> E. Approving the issuance of Notice via first class U.S. Mail, the form of the Envelope, and a postage prepaid return envelope.
>
> F.  Any further relief the Court deems appropriate.

[ECF Nos. 52, at 1-2; 53, at 2].

Plaintiff contends Defendant is a company based in St. Louis, Missouri, one subdivision of which provides courier services for various third-party client companies.  [ECF No. 53, at 2]. According to Plaintiffs, the persons who perform these courier services are referred to as "Fleet Drivers," and they are employed in 13 various states. *Id; See also* [ECF No. 66, at 19]. Plaintiffs claim that the approximately 1273 Fleet Drivers employed between August, 2009, and August, 2011, were classified by Defendant as "independent contractors," and required to sign an Independent Contractor Agreement. [ECF No. 53, at 3].  Pursuant to a provision in this

2

agreement, Plaintiffs allege that Defendant required its Fleet Drivers to provide insurance, fuel, and automobile maintenance, plus Fleet Drivers had to purchase JS Express uniforms and carry JS Express mobile telephones, all at their own expense. *Id.* at 3-4. Plaintiffs contend that Defendant's failure to reimburse Fleet Drivers for these expenses, which accrued to Defendant's benefit, resulted in a violation of the minimum wage provision of the FLSA. *Id.* at 4, 6. Plaintiffs also aver that whether they were paid on a piece or hourly basis, they were *not* paid overtime wages for time worked in excess of forty hours in an individual week. *Id.* at 3, 5.

Plaintiffs state that pursuant to a complaint filed by a J S Express fleet driver, the United States Department of Labor ("DOL") conducted an investigation of JS Express' driver operations. *Id.* at 4. Plaintiffs obtained a copy of the U.S. Department of Labor's WHISARD Compliance Report under the Freedom of Information Act. *Id.* According to Plaintiffs, the DOL found significant violations by Defendant of the FLSA applicable to *all* of J S Express's fleet drivers across the United States. *Id.* Plaintiffs further contend that the DOL determined that Defendant misclassified all J S Express courier or fleet drivers as independent contractors, and that the investigation of Defendant's pay practices found *thousands* of minimum wage and overtime violations amounting to more than ten million dollars of wages owed to fleet drivers. *Id.* at 1, 5. After receiving notice of this collective action, the DOL abated its own enforcement action in lieu of this lawsuit. *Id.* at 4-5.

## II. DISCUSSION

### A. Issuance of Notice to Similarly Situated Persons Under 29 U.S.C. § 216(b)

Section 7 of the FLSA requires that employers pay non-exempt employees overtime compensation of one and one-half times the regular hourly wage for all hours worked in excess of forty hours. 29 U.S.C. § 207. Section 6 of the FLSA requires that employers pay employees a

3

weekly statutory minimum wage. 29 U.S.C. § 206. A collective action under the FLSA to recover overtime compensation, minimum wages and liquidated damages may be maintained, "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Unlike a Rule 23 class action, a collective action under the FLSA is pursued on an "opt-in" basis, requiring employees to provide their consent in writing to join the action. *Id.; Schmaltz v. O'Reilly Auto. Stores, Inc.*, No. 4:12CV1056 JAR, 2013 WL 943752, at * 3 (E.D. Mo. Mar. 11, 2013) (citing *Ford v. Townsends of Ark., Inc.,* No. 4:08CV509, 2010 WL 1433455, at *8 (E.D. Ark. Apr. 9, 2010)).

The FLSA does not define the term "similarly situated." *Kautsch v. Premier Commc'n,* 504 F. Supp.2d 685, 689 (W.D. Mo. 2007). Moreover, the Eighth Circuit has not yet decided the standard for determining whether employees are "similarly situated." *Id.* at 688; *Schmaltz*, 2013 WL 943752, at * 3. District courts in this circuit, however, consistently apply a two-step analysis to the question of conditional certification. *See, e.g., Kennedy v. Boulevard Bank,* No. 4:12CV40 JCH, 2012 WL 3637766, at *2 (E.D. Mo. Aug. 22, 2012); *Ondes v. Monsanto Co.*, No. 4:11CV197 JAR, 2011 WL 6152858, at *2 (E.D. Mo. Dec. 12, 2011); *Perrin v. Papa John's Intern., Inc.,* No. 4:09CV01335 AGF, 2011 WL 4089251, at *2 (E.D. Mo. Sept. 14, 2011); *Beasely v. GC Servs. LP,* 270 F.R.D. 442, 444 (E.D. Mo. 2010); and *Littlefield v. Dealer Warranty Servs., LLC,* 679 F. Supp.2d 1014, 1016 (E.D. Mo. 2010). Under this two-step process, the plaintiff first moves for class certification at an early stage in the litigation. *Kautsch,* 504 F. Supp.2d at 688. A plaintiff's burden when seeking conditional certification is not onerous and the merits of a plaintiff's claims are not considered. *Id.* Plaintiffs can meet this burden by making a modest factual showing based upon the pleadings and affidavits. *Ondes,* 2011 WL 6152858, at *3 (citations omitted). Conditional certification "requires nothing more

4

than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Littlefield*, 679 F. Supp.2d at 1017.  The plaintiff "need not show that members of the conditionally certified class are actually similarly situated." *Dernovish v. AT & T Operations, Inc.,* No. 090015CVWODS, 2010 WL 143692, at *1 (W.D. Mo. Jan. 12, 2010) (internal quotations and citation omitted).  The Court will not make any credibility determinations or findings of fact with respect to contradictory evidence presented by the parties at this initial stage.  *Perrin,* 2011 WL 4089251, at * 3 (citing *Luiken v. Domino's Pizza, LLC*, No. 09516DWF/AJB, 2010 WL 2545875, at * 2 (D. Minn. June 21, 2010)).

The second step of the process occurs when the defendant moves to decertify the class. *Ford,* 2010 WL 1433455, at * 3; *Beasley,* 270 F.R.D. at 444; *Dernovish,* 2010 WL 143692, at * 1.  This typically is done after the close of discovery, when the Court has much more information and is able to make a more informed decision.  *Schmaltz*, 2013 WL 943752, at * 3.  "If the claims are not similarly situated, the Court decertifies the class and the opt-in plaintiffs are dismissed without prejudice." *Id.* (citing *Garner v. Regis Corp.,* No. 03-5037, 2004 WL 5455905, at * 2 (W.D. Mo. Aug. 5, 2004)).  It is under this general framework that the Court analyzes Plaintiffs' motion for conditional class certification.

Plaintiffs argue in support of their motion that notice under 29 U.S.C. § 216(b) should be issued to [Courier or][1] Fleet Drivers for any of J S Express' third-party client companies between March 14, 2009, and the present,[2] because Plaintiffs can establish that they and other similarly

---

[1]Although Plaintiffs, when filing their Motion to Issue Notice, initially refer to the putative class as "Fleet Drivers," they later amend the term to include "Courier Drivers" in an effort to allay any confusion by potential plaintiffs.  As such, the Court will reference the drivers in the putative class as "Courier or Fleet."

[2]Plaintiffs' proposed Notice period extends back to March 14, 2009, three years prior to Plaintiffs filing their original complaint in the Northern District of Illinois.  Plaintiffs have

situated persons were victims of a common practice to misclassify their status as independent contractors in violation of the law.  [ECF No. 53, at 5, 9].  The parties agree that 29 U.S.C. § 216(b) authorizes an employee to bring an action under the FLSA on his own behalf as well as for those "similarly situated."  *Id.* at 7; ECF No. 63, at 11.  Furthermore, both parties agree that the Eighth Circuit conducts the FLSA's similarly-situated analysis in two steps, and the initial step involves a determination that notice should be given to potential class members.  [ECF Nos. 53, at 7; 63, at 11].

Plaintiffs contend that the modest factual showing required under step one has been met here, as the evidence indicates that J S Express Courier or Fleet Drivers, who were classified as independent contractors by Defendant, were subject to a common plan to misclassify their status.  [ECF No. 53, at 8-9].  Plaintiffs argue that the findings of the DOL investigation reflected in the WHISARD Report more than satisfy their evidentiary burden.  [ECF No. 66, at 8].  Plaintiffs state that the Report includes a detailed analysis of Defendant's entire business operation, including all of the courier or fleet drivers.  *Id.*  Plaintiffs aver that the DOL applied a 7-factor test, akin to that utilized in the Eighth Circuit, in concluding Defendant's drivers were misclassified as independent contractors.  [ECF No. 53, at 5].  Plaintiffs state that the DOL findings are presumptively admissible under Fed. R. Evid. 803(8), as agency investigative reports

---

alleged that Defendant's conduct was willful, requiring a three year statute of limitations period.  [ECF No. 53, at 12].  The FLSA requires that a civil enforcement action be commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years.  *Laughlin v. Richard Shoe Co.*, 486 U.S. 128, 128-36 (1988); *Burkeen v. New Madrid County Ambulance Dist.*, No. 1:12CV154 SNLJ, 2013 WL 880079, at * 1 (E.D. Mo. Mar. 8, 2013).  Whether a violation is willful is a fact question that is often addressed at summary judgment or at trial.  *Burkeen*, 2013 WL 880079, at * 2 (internal citations omitted).  At the conditional class certification stage in the proceedings, judicial economy is served by conditionally certifying a larger more inclusive class.  *Id.* (citations omitted).

and determinations are excepted from the hearsay rule and are admissible against a hearsay objection. *Id.* at 4 n.2.

Defendant maintains that certification at the first stage requires substantial allegations that putative class members were victims of a single decision, plan or policy. Defendant, however, argues that Plaintiffs' Motion must be denied as they fail to present any admissible evidence that they and the putative class are similarly situated. [ECF No. 63, at 1]. Defendant notes that Plaintiffs do not put forth any declarations in support of their claim, and cannot use the DOL's Report to meet their evidentiary burden. *Id.* at 1, 12. Defendant argues that the DOL Report is inadmissible because it is untrustworthy under Fed. R. Evid. 803(8)(B) for several reasons: 1) there is no indication that the DOL documents are a final finding or opinion of the Department of Secretary; 2) the documents were created with a view towards litigation; and 3) they contain a second level of hearsay under Fed. R. Evid. 801(C) from unidentified witnesses. *Id.* at 16-18.

The Court must determine whether Plaintiffs have demonstrated that potential class members are similarly situated. Typically, this preliminary determination relies on the pleadings and affidavits. Here, in lieu of affidavits, Plaintiffs rely on the detailed findings of the DOL. Thus, the disputed admissibility of the DOL Report under 803(8) - the public records exception is central to the first stage of certification. Rule 803(8) of the Federal Rules of Evidence defines the "public records and reports" which are excepted from the hearsay rule. Rule 803(8) specifically excepts from hearsay, "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances

7

indicate lack of trustworthiness."[3] In *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 170 (1988), the Supreme Court specifically concluded that opinions, conclusions, and findings of fact are admissible under Rule 803(8). The Supreme Court stated that "[a]s long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Id.* The Eighth Circuit recently discussed the admissibility of public records created by agency investigations in *General Mills Operations, LLC v. Five Star Custom Foods, Ltd.* 703 F.3d 1104 (8th Cir. 2013). In *Five Star*, a press release issued by the United States Department of Agriculture (USDA) stating that beef was unfit for human consumption fell into the public-records hearsay exception, and thus was admissible in soup manufacturer's breach of contract action against meatball supplier, where the press release set out findings from an **investigation pursuant to authority granted by law**. *Five Star*, 703 F.3d at 1108-09.

The party opposing the admission of the report has the burden of proving the report's untrustworthiness. *Union Pac. R.R Co. v. Kirby Inland Marine, Inc. of Miss.*, 296 F.3d 671, 679 (8th Cir. 2002) (citing *Moss v. Ole S. Real Estate, Inc.,* 933 F.2d 1300, 1304 (5th Cir. 1991). Here, Defendant contends that the DOL Report lacks trustworthiness as it is not a final finding or opinion of the Department of Secretary. Defendants rely on *Junk v. Terminex Int'l*

---

[3]Rule 803(8) includes public records as a hearsay exception - see below:
**8) Public Records.** A record or statement of a public office if:
**(A)** it sets out:
**(i)** the office's activities;
**(ii)** a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
**(iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and**
**(B) neither the source of information nor other circumstances indicate a lack of trustworthiness.**
Federal Rule of Evidence Rule 803(8), (emphasis added).

*Co.*, 628 F.3d 439, 449 (8th Cir. 2010), in which an EPA report was subject to exclusion when it was not the "official opinion" of the agency.  [ECF No. 63, at 16].  Plaintiffs dispute Defendant's contentions that the Report is untrustworthy, stating that the investigation reflected a completed audit of estimated minimum wages and overtime pay, which Plaintiffs allege is sufficient as the Federal Rules of Evidence do not require an investigative report to contain a "final finding."  [ECF No. 66, at 4].  At the hearing held on April 29, 2013, Plaintiffs further emphasized that the DOL's investigation only remained open as *Defendant* had refused to come into compliance with the FLSA.  *See also* ECF No. 66, at 4.  Furthermore, as Plaintiffs observe, Defendants' reliance on *Junk* is distinguishable, as the report at issue in *Junk*, was prepared by an outside expert, and bore a disclaimer that it was not necessarily representative of the EPA's views.  *Id.*

Defendant also argues that the DOL Report is untrustworthy as it was created with a view toward litigation, and thus, was not the opinion of a neutral fact finder.  [ECF No. 63, at 17].  Plaintiffs contend that Defendant's argument conflates the purpose of the DOL investigation and Compliance Report with the potential result of the DOL's investigation - litigation, if Defendant ultimately refused to comply with federal law.  [ECF No. 66, at 5].  Here, no facts are offered by Defendant beyond the DOL Report's status as an investigation - to show bias.  Defendant has not disputed that the DOL investigator was under a duty to investigate, or that the investigation was authorized by law.  *See Masemer v. Delmarva Power & Light Co.*, 723 F. Supp. 1019, 1021 (D. Del. 1989) (stating that because the report was prepared by an independent governmental agency charged with investigating accidents in the workplace, there could be no question of bias on the part of the investigator).  Defendant has failed to produce any evidence that would call into question the investigator's experience or skill.  *Id.*  Common sense would seem to dictate that as many agency investigations involve a potential for litigation, Rule 803's language excepting from

9

hearsay - "factual findings from a legally authorized investigation" would be rendered meaningless under Defendant's rationale that an agency's investigative report can not credibly be presented as the report of a neutral factfinder. [ECF No. 63, at 17].

When considering whether a report is trustworthy, the court should not consider whether the report is credible, but rather should consider whether the report is reliable. *Union Pac. R.R.*, 296 F.3d at 679 (citing *Moss*, 933 F.2d at 1306-07). "The Rule 803 trustworthiness requirement, therefore, means that the trial court is to determine primarily whether the report was compiled or prepared in a way that indicates that its conclusions can be relied upon." *Id.* (citing Moss, 933 F.2d at 1307). Here, Defendant does not show that the individual or methodology of preparing the Report were unreliable, and the Report's investigatory nature is alone not sufficient to establish bias or untrustworthiness.

Finally, Defendant argues that the DOL Report is inadmissible as it contains a second layer of hearsay from unidentified witnesses. [ECF No. 63, at 18]. Plaintiffs argue under *Union Pac. R.R.*, 296 F.3d at 679, that an agency investigator's reliance on hearsay evidence does not render the preparation of the report untrustworthy. [ECF No. 66, at 6]. "Many government reports, as with many expert witnesses, have to rely in part on hearsay evidence, and the reports are not generally excluded for this reason." *Moss*, 933 F.2d at 1309 -1310. Under Fed. R. Evid. 703, experts are allowed to rely on evidence inadmissible in court in reaching their conclusions. There is no reason that government officials preparing reports do not have the same latitude. *Id*. at 1310. Thus, regardless of whether the DOL's conclusions were drawn from the statements of others, it does not render the Report inadmissible under Federal Rule of Evidence Rule 803(8).

Defendant fails to meet its evidentiary burden to show that Plaintiffs cannot use the DOL Report as it is untrustworthy under Rule 803(8). Defendant's corresponding argument that

Plaintiffs do not present any admissible evidence that they and the putative class are similarly situated, likewise fails.  Defendant alternately argues that, even if Plaintiffs could meet their evidentiary burden of "substantial allegations," their Motion should be denied as there is no feasible way for the Court to adjudicate this issue on a class wide basis. [ECF No. 63, at 22]. Defendants contend that collective treatment is not appropriate in this case due to the individualized inquiry necessary to determine plaintiffs' status under the FLSA.  *Id.* at 19.  If the Court certifies the class, Defendant contends it would have to conduct a fact intensive analysis for every one of the 1,000 plus potential opt-in plaintiffs to determine if each was properly classified as an independent contractor.  *Id.* at 21.  Defendant offers certifications from courier drivers which attempt to establish that they are independent contractors under the Eighth Circuit's Six-Factor test.  *Id.* at 8-11.  Defendant alleges that the contractors Plaintiffs seek to represent work in different states, in different industries, and for different J S Express clients with distinct demands.  *Id.* at 2.  Defendant also attaches certifications of J S contractors to establish that it does not treat all of its drivers similarly.  *Id.* at 3-6.  Defendant further maintains that the *named Plaintiffs* occupy unique positions and are not similarly situated with drivers that did not work for the same third-party client, U.S. AutoForce in Chicago.  *Id.* at 22.  Defendant alleges that the duties of the named Plaintiffs vary significantly from other putative plaintiffs.  *Id.* at 23. Plaintiffs respond that Defendant's arguments related to alleged individual inquires and the merits of the claims are premature, and more properly addressed when discovery is completed during the second step of the certification process. [ECF No. 66, at 10].  Plaintiffs argue that differences between putative class members are not enough to defeat a motion for class certification at this stage.  *Id.* at 11.  Plaintiffs emphasize that the general nature of the delivery drivers' job duties are homogenous.  *Id.* at 15.

As noted earlier, the first stage of certification requires nothing more than substantial allegations that putative class members were together the victims of a single decision, policy or plan.  The Court need not make a credibility determination with respect to contradictory evidence presented by Defendant at this stage.  Defendant's argument that there is no feasible way to adjudicate due to the necessity of individual inquiries is premature.  Manageability is an issue for the second stage of the conditional certification analysis.  *Arnold v. DirecTv, Inc.*, No. 4:10CV352 JAR, 2012 WL 4480723, at *7 (E.D. Mo. Sept. 28, 2012).

Thus, the Court finds that Plaintiffs have made substantial allegations that the putative class of courier or fleet drivers were together the victims of a single decision, policy or plan.  As Plaintiffs have made a showing that they are similarly situated with other putative plaintiffs, the Court finds that conditional certification is proper under the FLSA for purposes of notice and discovery.

### B.  Equitable Tolling of the Limitations Period

Plaintiffs request that the Court issue an order tolling the limitations period as of March 14, 2012, the date the Complaint was filed. [ECF No. 53, at 12].  Plaintiffs argue that equitable tolling is appropriate under the FLSA where similarly situated plaintiffs, through no fault of their own, have been unable to join the lawsuit.  *Id.* at 10.  "The doctrine of equitable tolling permits a plaintiff to sue after the statutory time period has expired if he has been prevented from doing so due to inequitable circumstances."  *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d 669, 675 (8th Cir. 2009) (citing *Pecoraro v. Diocese of Rapid City,* 435 F.3d 870, 875 (8th Cir. 2006)).  "Because statutes of limitations protect important interests of certainty, accuracy, and repose, equitable tolling is an exception to the rule, and should therefore be used only in exceptional circumstances."  *Motley v. United States,* 295 F.3d 820, 824 (8th Cir. 2002) (quotation omitted);

12

*see Riddle v. Kemna,* 523 F.3d 850, 857 (8th Cir. 2008) ("Equitable tolling is an exceedingly narrow window of relief." (quotation omitted)).

"The party who is claiming the benefit of an exception to the operation of a statute of limitations bears the burden of showing that he is entitled to it." *Motley,* 295 F.3d at 824 (citing *Wollman v. Gross,* 637 F.2d 544, 549 (8th Cir. 1980), *cert. denied,* 454 U.S. 893(1981)). This generally involves "establishing two elements: (1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way." *Firstcom*, 555 F.3d at 675 (citing *Riddle,* 523 F.3d at 857). Here, Plaintiffs allege that Defendant refused to provide information on class members and delayed the action through procedural maneuvering, preventing potential plaintiffs from obtaining information about the lawsuit and their right to opt-in. [ECF No. 53, at 17]. Defendant objects to Plaintiffs' request for equitable tolling, alleging that Plaintiffs have not met their evidentiary burden to establish that they have pursued their rights diligently, nor have they shown that some extraordinary circumstance prevented them from seeking conditional certification at an earlier date. [ECF No. 63, at 29-30]. Defendant alleges that there is no requirement in § 216(b) that it provide contact information on class members, nor is it the basis for equitable tolling. *Id.* at 31-32.

It is an open question as to whether refusal to provide contact information that the FLSA does not require to be disclosed is sufficient grounds for equitable tolling. *Compare Adams v. Inter–Con Sec. Sys., Inc.,* 242 F.R.D. 530, 543 (N.D. Cal. 2007), *with Gerlach v. Wells Fargo & Co.,* No. C050585 CW, 2006 WL 824652, at *5 (N.D. Cal. Mar. 28, 2006). There is no clear Eighth Circuit authority on the issue. *Putnam v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. 264, 276 (S.D. Iowa, 2011). But, a court in the Southern District of New York points out that,

13

> FLSA defendants are not obligated from the inception of a litigation either to provide contact information of putative collective action members or to toll potential claims voluntarily. To grant the exceptional remedy of equitable tolling any time an FLSA defendant declines to provide contact information or to toll claims would, in effect, require that the statute of limitations for FLSA claims be tolled as a matter of course for all potential plaintiffs whenever the first plaintiff files her complaint—a result plainly contrary to the procedural rules that govern FLSA collective actions.

*Amendola v. Bristol–Myers Squibb Co.,* 558 F. Supp.2d 459, 480 (S.D.N.Y. 2008) (citing *Boykin v. KeyCorp,* 521 F.3d 202, 211 n.10 (2d Cir. 2008)) ("[T]o permit equitable tolling for [an] entire class of individuals would threaten to extend the doctrine beyond its limitation to 'rare and exceptional circumstances.'"). *See also Prentice v. Fund for Pub. Interest Research, Inc.,* No. C067776SC, 2007 WL 2729187, at *10 (N.D. Cal. Sept. 18, 2007) (But "[i]f refusal to disclose contact information is sufficient basis to grant equitable tolling, either the FLSA statute of limitations is meaningless or the Courts are reading a disclosure requirement into the FLSA where the statute does not contain such a requirement."). This Court agrees that a failure to disclose contact information is not an "exceptional circumstance" warranting equitable tolling. *See Putnam*, 276 F.R.D. at 276 (citing *Jenkins v. Mabus,* 646 F.3d 1023, 1029 (8th Cir. 2011)).

In response to Plaintiffs' argument that Defendant's procedural maneuvering warrants equitable tolling, Defendant maintains that the procedural delay alleged by Plaintiffs was self-inflicted as Plaintiffs failed to serve Defendant for two months, filed in the incorrect district, and incurred a three-month delay between the transfer of this case and the instant Motion. [ECF No. 63, at 31]. Plaintiff responds that Defendant's arguments are misleading as Defendant refused to return the waiver of service, obliging Plaintiffs to personally serve it, and causing delay. [ECF

14

No. 66, at 20]. Also, Plaintiffs argue that the presence of a forum selection clause in the Independent Contractor agreement did not render the instant forum the only *correct* one in which to choose to file their claims. *Id.* Overall, the Court does not find that Plaintiffs' allegations of procedural delay by Defendant rise to the level of an extraordinary circumstance. The Court denies Plaintiffs' request for equitable tolling from the date of filing the complaint to the Court-ordered deadline for filing opt-in consents. However, the Court will permit tolling for the time necessary to consider this pre-trial Motion. Therefore, the Court will toll the statute of limitations from January 15, 2013, when Plaintiffs' filed their certification Motion, until the sixty-day notice period *begins* to run. *See Putnam*, 276 F.R.D. at 276.[4]

### C. Proposed Notice and Consent Forms[5]

Defendant states that if the Court conditionally certifies a class, it does not oppose the issuance of a court-authorized notice. [ECF No. 63, at 26]. Further, Defendant does not object to the method of notice proposed by Plaintiffs, first class U.S. Mail. Defendant also does not raise any objections to the form of the envelope [ECF No. 53-7], or a postage-prepaid return envelope. Defendant does, however, state that it has significant concerns about the form of the Notice and the related response period proposed by Plaintiffs. *Id.* at 26. Although Plaintiffs contend that the 216(b) Notice is "fair and accurate" [ECF No. 53, at 13], Defendants argue that

---

[4]As the Complaint in this matter was filed on March 13, 2012, and with a three-year statute of limitations, the earliest possible cutoff date for eligible claims by Plaintiffs is March 14, 2009. Claims of other potential plaintiffs are tolled on the date their consent forms are filed. *See Littlefield*, 679 F. Supp.2d at 1019 ("In the case of a collective action [under the FLSA], an action is commenced when a party files his or her written consent to join."). March 14, 2009, is the earliest possible date that an opt-in plaintiff may have been last employed by Defendant in order to have a timely claim under FLSA.

[5]Plaintiffs have submitted a Modified Notice and Consent to the Court in which they have modified the term referring to potential class members from "Fleet Drivers" to "Courier Drivers or Fleet Drivers" to allay potential confusion. [ECF No. 66, at 19].

the Notice should not begin with a formal pleading header or case caption as it may convey that the Notice is an official Court-issued document. [ECF No. 63, at 27]. Plaintiffs, however, maintain that the caption assists the recipient in distinguishing the Notice from junk mail. [ECF No. 66, at 16]. Defendant also contends that the disclaimer contained in the Notice, conveying that the Court has expressed no opinion on the merits, should be at the top of the Notice as opposed to the end. [ECF No. 63, at 27]. Additionally, Defendant seeks to strike Plaintiffs' statement, "[t]his is not a solicitation from a lawyer," from the proposed Notice because Defendant alleges it is inaccurate. *Id.* at 28. Plaintiffs, however, maintain that the court-authorized Notice is not a solicitation as it *also* informs the reader that he or she will only be represented by Plaintiffs' attorneys if he or she doesn't hire a different attorney. [ECF No. 66, at 17-18].

Finally, Plaintiffs ask for a 60 day period for opt-in plaintiffs to return their consent forms. [ECF No. 53, at 13]. Plaintiffs also request that thirty (30) days after sending the initial Notice, they be authorized to mail a reminder notice to all putative opt-in Plaintiffs who have not yet joined the lawsuit. *Id.* at 14-15. Defendant contests Plaintiffs' proposed 60-day response period, and requests a shorter 45-day return period to "avoid further delay." [ECF No. 63, at 28-29]. Defendant objects to the reminder notice, claiming it could be interpreted as judicial encouragement to join the suit. *Id.* at 28.

At the hearing on April 29, 2013, the parties indicated that they would confer over the form of the Notice. The Court will order the parties to submit a proposed joint Notice to the Court for review. As noted, Defendant does not object to Plaintiffs' proposition to utilize first class U.S. Mail as the method of Notice, nor does Defendant contest the form of the envelope, or the postage-prepaid return envelope. The Court accepts the Plaintiffs' proposed opt-in period of

16

sixty days. *See Littlefield*, 679 F. Supp.2d at 1019. Thirty days after sending the initial Notice, the Court authorizes Plaintiffs to send a reminder notice to all putative opt-in Plaintiffs who have not yet joined the suit, subject to the condition that it contains a disclaimer that the Court does not encourage or discourage participation in the case.

Accordingly,

**IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for a conditional class certification [ECF No. 52] is **GRANTED** consistent with provisions of this Order;

2. The parties will confer regarding the form of the Notice and Reminder Notice, and submit a proposed joint Notice and Reminder Notice for the Court's approval within 15 days of this Order;

3. Upon approval by the Court of the form of the proposed Notice, pendency of this action shall be sent by first class U.S. Mail to all individuals who worked at J S Express as Courier or Fleet Drivers for any of J S Express' third-party client companies in the United States between March 14, 2009, and the present, and who were classified as independent contractors;

4. Putative class members shall have 60 days from circulation of the Notice in which to opt-in to this action;

5. Thirty days after sending the initial Notice, Plaintiffs may send the Court-approved reminder notice, containing a disclaimer that the Court does not encourage or discourage participation in the case, to all putative opt-in Plaintiffs who have not yet joined the suit;

6. The statute of limitations will be equitably tolled from the January 15, 2013 filing of Plaintiffs' instant Motion, until the sixty-day notice period *begins* to run; and

7. Defendant shall submit to Plaintiffs, within seven (7) days of the Court's Order, a complete list of the names and addresses of all current and former Courier or Fleet Drivers who worked for Defendant in the three years preceding Plaintiffs filing their Complaint on March 13, 2012, through the present, and who were classified as independent contractors.

  Dated this __30th__ day of May, 2013.

*[signature]*

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE